## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )     CRIMINAL NO. 07-20 |
| | ) |
| | ) |
| DEMONT MORRIS, a/k/a Guy | ) |
| Morris, CHRISTOPHER VUCKOVICH, | )     JUDGE KIM R. GIBSON |
| VALENTINO EVANS, JR., a/k/a | ) |
| Little Man, | ) |
|     Defendants. | ) |

## Memorandum Opinion and Order

And now, this 8th Day of December, 2008,this Order addresses Defendants' unresolved pretrial motions. On September 19, 2007, an indictment was returned in this District charging Defendants Demont Morris, Christopher Vuckovich and Valentino Evans with one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A)(ii). Doc. No. 1. The indictment also charged Defendant Vuckovich with two counts of unlawful distribution and possession with intent to distribute, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(C). *Id.* All three Defendants have filed numerous pretrial motions. On November 5, 2008, this Court heard oral arguments and evidence on these motions, and a transcript of this proceeding is available at Doc. No. 147 ("the Hearing" or "Hr'g Tr.").

## Findings of Fact

The Court first sets forth the findings of fact from testimony presented at the Hearing, which are relevant to the motions to suppress of Defendant Morris and Defendant Evans.

1. Kevin Price is a Cambria County detective and the field supervisor of the Cambria County Drug Task Force. Hr'g Tr., p. 4.

2. Mr. Price has been involved with the federal aspects of the case involving Defendants Morris, Vuckovich and Evans since the inception of the case. Hr'g Tr., p. 4.

3. As an investigative technique, Mr. Price receives recordings of numerous jail calls. Hr'g Tr., p. 5.

4. The phone company that serves the Cambria County Jail automatically records every phone call made by inmates. These phone calls are downloaded and stored, and investigators are allowed access to them. Hr'g Tr., pp. 7, 19.

5. An inmate desiring use of the jail phone system must provide the prison with paperwork on the numbers they are going to call. Hr'g Tr., p. 6.

6. The inmate may inform the prison of the phone number of his attorney. The recording system itself does not allow police access to recordings of an inmate's direct call to his attorney's number. Hr'g Tr., p. 6.

7. Mr. Price did not specifically request that the prison monitor only Mr. Evans. Hr'g Tr., p. 7.

8. After entry processing, inmates are given a handbook which contains information about the phone system and the recording of calls. Hr'g Tr., p. 7; Doc. No. 130, ex. 1.

9. Mr. Price does not know whether Mr. Evans actually read the prison handbook. Hr'g Tr., p. 16.

10. To make phone calls, inmates must sign a release form that states: "I understand and agree that telephone calls are subject to monitoring, recording, and may be intercepted or

2

divulged." Hr'g Tr. p. 7, Doc. No. 130, ex. 2.

11. Signs posted near each telephone and "throughout the jail" state that calls are monitored and recorded. Hr'g Tr., pp. 7-8.

12. At the beginning of an inmate's phone call, a recorded message states that the phone call will be recorded and monitored. Hr'g Tr., p. 7.

13. Mr. Price has never received recordings of direct calls between an inmate and the inmate's attorney. Hr'g Tr., p. 10.

14. Mr. Price did not attempt to access the recordings of any phone calls made directly from Defendant Evans to his attorney. Hr'g Tr., p. 18.

15. In one instance, Mr. Price listened to a recording of a call placed from Defendant Evans to a female. Mr. Price believes that the call was later connected via three-way calling to Evans' attorney, Russell Heiple. Upon hearing and recognizing Mr. Heiple's voice, Mr. Price explained that he stopped listening to the phone call. Hr'g Tr., p. 13.

16. The Cambria County Jail phone system prohibits three-way calls. Hr'g Tr., p. 12. However, Mr. Price believes that the Cambria County Jail phone system has no reliable way of detecting three-way calls. Hr'g Tr., p. 12.

17. Mr. Price has reviewed recordings of phone calls from Defendants Morris, Vuckovich, and Evans. Hr'g Tr., p. 17.

18. Mr. Price did not review any phone calls made by any of the defendants directly to their attorneys. Hr'g Tr., p. 18.

20. Mr. Price indicated that he did not know whether he was authorized to conduct

3

investigations pursuant to the Federal Wiretap Act. Hr'g Tr., p. 20.

## MOTIONS OF DEFENDANT MORRIS

On June 13, 2008, Defendant Morris filed the following motions: Motion in Limine (Doc. No. 98), Motion to Suppress (Doc. No. 102), Motion for Discovery and Inspection (Doc. No. 104), Motion to Inspect Jury Selection Materials (Doc. No. 106), Motion for Leave to Join in Motions of Codefendants (Doc. No. 108), Motion to Permit Counsel to Conduct Voir Dire of Prospective Jurors (Doc. No. 121), and Motion to Permit Counsel to Submit Questions on Voir Dire of Prospective Jurors (Doc. No. 122).

### Morris' Motion in Limine (Doc. No. 98)

Defendant's Motion requests the exclusion of any evidence offered under F.R.E. 404(b), and the exclusion of certain recorded telephone conversations. Doc. No. 98. Among other assertions, Defendant argues that the probative value of such evidence would be outweighed by the potential for prejudice. Doc. No. 99, pp. 3-5. On October 3, 2008, the United States filed a Response. Doc. No. 130, pp. 1-3. The government argues that Defendant's request is premature because according to this Court's Pretrial Order, the United States has until a certain date to specify what, if any evidence it intends to introduce at trial under F.R.E. 404(b). Doc. 130, p. 2.

These issues were further argued by the parties at the Hearing. Hr'g Tr., pp. 22-26. At the Hearing, Defendant's Counsel concurred in part with the United States, "because the Court had set a date for [404(b) materials]." Doc. No. 147, p.25. Indeed, as acknowledged by Defendant's Counsel, Defendant's Motion in Limine as to evidence offered under F.R.E. 404(b) is premature

4

and governed by the Court's Pretrial Order; therefore, it is hereby ordered that Defendant's Motion in Limine with respect to 404(b) material is denied.

The Motion also challenges the recordings of telephone conversations at Cambria County Prison, claiming that such recordings are inadmissible under F.R.E. 104(a), F.R.E. 401, or F.R.E. 403. Doc. No. 98, p. 3. The United States argues in response that "the more appropriate time to assess whether potential evidence is relevant, as well as whether such evidence is more prejudicial than probative, is at the time such evidence is being introduced at trial." Doc. No. 130, p. 2. At the Hearing, Defendant's Counsel conceded the government's argument regarding relevancy, but emphasized the "prejudicial effect of these tapes versus the probative value of what those tapes say." Hr'g Tr., p. 26. The Court believes that in this matter, the more appropriate time to address whether this potential evidence is relevant, or whether such evidence is more prejudicial than probative, is at a date closer to trial. Additionally, the Court notes that Defendant's Motion in Limine apparently challenges the entirety of the taped recordings, while failing to specify sections or statements, or the precise prejudicial effect of those sections. Therefore, Defendant's Motion in Limine regarding the relevancy and prejudicial effect of the telephone recordings is denied as both premature and insufficiently precise.

## Morris' Motion to Suppress (Doc. No. 102)

### I. Background

Defendant's Motion asks the court to suppress records of Defendant's telephone calls that were intercepted by law enforcement officials. Doc. No. 102. Defendant's Motion alleges that "statements were obtained while the Defendant was represented by counsel." Doc. No. 102, ¶ 2. Defendant's Motion then alleges that the statements were recorded in violation of "Defendant's

5

privilege against self-incrimination, attorney/client privilege and rights to counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments." Doc. No. 102, ¶ 4. Defendant also argues that the interception of the phone calls by the government is an unlawful search and seizure under the Fourth Amendment. Doc. No. 102, ¶ 3.

The United States' Response (Doc. No. 130, pp. 3-8) emphasizes that the recording that took place cannot possibly violate Defendant's right to counsel, because Defendant's Motion does not allege that the recorded conversations were between Defendant and counsel. Doc. No. 130, p. 3. Furthermore, the United States argues that a request to suppress recordings of conversations between Defendant and non-attorney contacts is meritless because Defendant "was provided ample notice of the monitoring and recording of all non-attorney calls by the Cambria County Prison." Doc. No. 130, p. 4.

**II. Analysis**

**1. Recording the Phone Calls did not Violate Defendant's Rights under the Fourth, Fifth, Sixth and Fourteenth Amendments.**

Defendant argues that the recording violated his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments. Doc. No. 103, p. 3. While stating that the admissibility of a defendant's incriminating statements involves analysis under those four Amendments, Defendant's brief provides only light explanation of the specifics of any such arguments, citing, without explanation or application, three Supreme Court cases: *United States v. Henry*, 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1988), *Brewer v. Williams*, 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977), and *Maine* v. *Moulton*, 474 U.S. 159, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985). The Court will analyze Defendant's possible rights under each Amendment, as well as any possible

6

connections to the cited Supreme Court cases.

### a. Defendant's Fourth Amendment Rights Were not Violated

The Fourth Amendment prohibits unreasonable searches and seizures. *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S. Ct. 1359, 1361, 93 L. Ed. 1782, 1785 (1949) ("The security of one's privacy against arbitrary intrusion by the police–which is at the core of the Fourth Amendment–is basic to a free society."). Where evidence is obtained in violation of this prohibition, it may not be used against the defendant. *Mapp v. Ohio*, 367 U.S. 643, 648, 81 S. Ct. 1684, 1688, 6 L. Ed. 2d 1081, 1086 (1961).

In this instance, however, the exclusionary rule is not applicable because Morris did not have the required reasonable expectation of privacy. *See California v. Greenwood*, 486 U.S. 35, 39, 108 S. Ct. 1625, 1628, 100 L. Ed. 2d 30, 36 (1988) (explaining that a search and seizure only violates the Fourth Amendment if the defendant possessed a subjective expectation of privacy "that society accepts as objectively reasonable."). Whether a person has a reasonable expectation of privacy is based on an assessment of the totality of the circumstances, considering numerous factors. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633, 641 (1980).

Here, Defendant Morris did not have a reasonable expectation of privacy in his phone calls and hence did not have a Fourth Amendment right. First, the government has shown that Defendant Morris was given no less than four warnings that the phone calls made at the prison were subject to recording. Hr'g Tr., pp. 23-24, Findings of Fact (hereinafter "FOF"), ¶¶ 8,10,11,12. First, the Cambria County Prison Inmate Handbook provided to each inmate clearly states that phone calls are monitored. FOF ¶ 8. Second, the Cambria County Prison Inmate Telephone ID

7

Number Release Form states that phone calls are monitored. FOF ¶ 10. Third, the prison's housing units have signs that warn of the recording. FOF ¶ 11. Finally, at the beginning of the phone calls, both the inmate and the person called hear message telling them that call is subject to monitoring and recording. FOF ¶ 12. The Court concludes that these several and repeated warnings are sufficient to destroy any putative expectation of privacy, even if one warning was not read or seen, *see* FOF ¶ 9.

Additionally, Defendant's rights under Title III may have been implicated by the recordings. Title III prohibits the interception of "any wire, oral, or electronic communication," including telephone conversations, in the absence of judicial authorization. 18 U.S.C. §§ 2511(1) and 2516. The statute provides that telephone communications intercepted in violation of Title III may not "be received in evidence in any trial . . . ." 18 U.S.C. § 2515. However, this broad prohibition is subject to two exceptions: 1) where the conversation is intercepted "by an investigative law enforcement officer in the ordinary course of his duties," 18 U.S.C. § 2510(5)(a)(ii), and 2) when "one of the parties to the communications has given prior consent to such interception." 18 U.S.C. § 2511(2)(c).

The Court finds that both exceptions are applicable to this situation, which means that Title III did not prohibit the recordings and cannot offer any evidentiary protection for Defendant Morris. First, the government offered sufficient evidence at the Hearing that such recordings take place in the ordinary course of police duties related to prison security. FOF ¶¶ 3-4. The recording policy of the Cambria County Jail is to monitor all calls made by all inmates, except those dialed directly to an inmate's attorney. FOF ¶¶ 4, 6. Such recording programs have been routinely upheld. *See United States v. Hammond*, 286 F. 3d 189, 192 (4th Cir. 2002); *United States v.*

8

*Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989).

Additionally, the calls in question fall within the exception granted when "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c); *see also United States v. Hodge*, 85 Fed. Appx. 278, 281 (3d Cir. 2003); *see also United States v. Demelio*, 2005 U.S. Dist. LEXIS 42931 (W.D. Pa. Aug. 16, 2005). Defendant Morris consented to the recording by making the phone calls after having received four forms of notice that the calls were recorded. FOF ¶¶ 8,10,11,12. The Court finds that these warnings, combined with Defendant Morris' consequent phone use, are sufficient evidence of consent.

### b. Defendant's Fifth Amendment Rights Were not Violated

The Fifth Amendment provides that no person "shall be compelled to be a witness against himself . . . ." U.S. CONST. amend V. The Fifth Amendment has been interpreted to mean that an individual may refuse to answer questions that may self-incriminate, and violations of this right may be the basis for a confession being inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S. Ct. 1602, 1609, 16 L. Ed. 2d 694, 704 (1966). Here, Defendant has not shown that any incriminating testimony was compelled or taken during interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297, 307 (1980). Defendant's statements were merely voluntary spontaneous statements. *See, e.g.*, *Arizona v. Mauro*, 481 U.S. 520, 529,107 S. Ct. 1931, 1936, 95 L. Ed. 2d 458, 468 (1987) (explaining that as to voluntary statements, Fifth Amendment privileges and exclusionary rules are not applicable).

### c. Defendant's Sixth Amendment Rights Were not Violated

The Sixth Amendment guarantees the defendant in a criminal prosecution the right to the assistance of counsel. U.S. CONST. amend VI. The Supreme Court described this right as

9

"[e]mbodying 'a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself,' the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." *Maine v. Moulton*, 474 US 159, 169, 106 S. Ct. 477, 483, 88 L. Ed. 2d 481, 491 (1985) (citation removed). This right applies to all critical stages of a criminal prosecution, after formal charges have been filed. *Massiah v. United States*, 377 U.S. 201, 205, 84 S. Ct. 1199, 1202, 12 L. Ed. 2d 246, 250 (1964). The right is violated where police obtain a confession from a defendant when counsel is not present, or without having first obtained a waiver of the defendant's right to have counsel present. *See Fellers v. United States*, 540 U.S. 519, 524, 124 S. Ct. 1019, 1022, 157 L. Ed. 2d 1016, 1022 (2004).

None of the three cases cited in Defendant's Motion is applicable in this situation. In *United States v. Henry*, the Court held that incriminating statements made to a government informant while in jail pending trial were inadmissible because they were obtained in violation of the Sixth Amendment right to counsel. 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1988). In *Henry*, the government sent a paid informant into prison to elicit incriminating statement from the defendant; this was an intentional strategy to create a situation where the defendant would make incriminating statements without the assistance of counsel. *Id.* at 266, 100 S. Ct. at 2184, 65 L. Ed. 2d at 119. *Brewer v. Williams* held that a police officer sought to elicit incriminating statements while transporting a defendant, without counsel, by evoking the notion that the deceased girl deserved a "Christian burial." 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). In *Maine v. Moulton*, the Court held that where the police planned and arranged to record conversations between a cooperating defendant and his co-defendant, the right to counsel was violated. 474 U.S. 159, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985).

10

The initial relevance of these three cases has not been established, as Defendant's Motion does not identify any theory upon which the three cases could be relevant to the recording of Morris' phone calls. With respect to Morris, the government did not conspire to "deliberately elicit" incriminating statements from him when his counsel was not present. The police did not conspire, scheme, plan or arrange to elicit incriminating statements specifically from Morris, as all prison phone calls are recorded. FOF ¶ 3 (testimony stating that all calls made by all inmates are recorded). Instead, the prison passively provided a telephone system for Morris' benefit, while carefully and repeatedly warning Morris that all phone calls would be monitored. FOF ¶¶ 8, 10, 11, 12. This monitoring is a routine prison practice that is a sensible aspect of prison safety procedures. Of the factors in the three above cases that might support a finding of a Right to Counsel violation, none is present in the recording of Defendant Morris' phone calls. Therefore, the Court finds no basis for a Right to Counsel violation as alleged in Defendant's Motion.

### d. Defendant's Due Process Rights Were not Violated

As a condition of admissibility, the Due Process Clauses of the Fifth and Fourteenth Amendments require that confessions be voluntary. *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) ("Due Process clauses of the Fifth and Fourteenth Amendment bar the use of incriminating statements that are involuntary."). Voluntariness is assessed by the totality of the circumstances. *See Spano v. New York*, 360 U.S. 315, 323, 79 S. Ct. 1202, 1207, 3 L. Ed. 2d 1265, 1272 (1959). An example of an involuntary confession is one obtained by physical beating, as in *Brown v. Mississippi*, 297 U.S. 278, 56 S. Ct. 461, 80 L. Ed. 682 (1936). Official compulsion, typically engineered by police investigators, is necessary for a confession or incriminating statement to be involuntary. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S. Ct. 515, 520, 93 L. Ed. 2d 473, 482

11

(1986).

Morris' situation contained no such official compulsion. Instead, in assessing the totality of the circumstances, this Court finds more than sufficient evidence of voluntariness. For instance, the phone system within the prison is entirely voluntary. Second, four warnings were given to Morris regarding the monitoring of phone conversations. FOF ¶¶ 8, 10, 11, 12. This setting, lacking in deception or other leverage, typifies voluntariness; therefore, Morris' due process rights were not violated.

For all of the foregoing reasons, it is hereby ordered that Defendant's Motion to Suppress is denied.

## Morris' Motion for Discovery and Inspection (Doc. No. 104)

On June 13, 2008, Morris filed a Motion for Discovery and Inspection, which included nine specific requests (Doc. No. 104). The United States answered each of these requests. Doc. No. 130, pp. 8-10. At the Pretrial Motions Hearing, Morris' Counsel indicated that the government answered each request satisfactorily. Hr'g Tr., p. 27. Therefore, this Motion is moot.

## Morris' Motion to Inspect Jury Selection Materials (Doc. No. 106)

Defendant moves for permission to inspect jury selection materials. Doc. No. 106. The government argues that Morris appears to request material outside the scope of Local Criminal Rule 24.1. Doc. No. 130, p. 10. Defendant's motion is granted to the extent it is within the parameters of Local Criminal Rule 24.1, and such materials shall be provided to Defendant after his compliance with the Rule's requirements.

## Morris: Motion for Leave to Join in Motions of Codefendants (Doc. No. 108)

Morris seeks leave to join in the motions of his Codefendants to expedite these proceedings

12

and avoid duplication of motions. Doc. No. 108. The government does not oppose Morris joining specifically referenced motions, but states that the Motion is too general to give the government adequate notice as to which motions Morris seeks to join. Doc. No. 130, p. 11. Defendant's Counsel responded at the hearing, "They've been filed . . . So they're out there." Hr'g Tr., p. 29. The Court finds that the government has adequate notice that Morris apparently intends to join all of the other two defendants' pending motions, and it is hereby ordered that Morris is allowed to do so, with two exceptions.

This Order is limited in that it is not applicable to those motions where joining would logically require additional argument specific to Morris. Therefore, Morris is not granted leave to join Defendant Vuckovich's Motion for Severance, Defendant Vuckovich's Motion for Bill of Particulars, and Defendant Evans' Motion to Suppress. These motions logically require separate and specific motions. As to the remaining motions, the Court's Orders will also be applicable to Morris.

## Morris' Motion to Permit Counsel to Conduct Voir Dire of Prospective Jurors (Doc. No. 121)

Morris moves for permission to conduct voir dire of prospective jurors. Doc. No. 121. The government opposes the motion by arguing that the Court's process already adequately addresses Defendant's concerns. Doc. No. 130, pp. 11-12.

It is the Court's practice under Federal Rule of Criminal Procedure 24 to conduct voir dire itself rather than permit either of the attorneys to examine any of the prospective jurors. The Court will continue this practice in the case *sub judice*. Defendant's Motion is denied.

## Morris: Motion to Permit Counsel to Submit Questions on Voir Dire of Prospective Jurors (Doc. No. 122)

13

Morris moves for permission to submit voir dire questions of prospective jurors. Doc. No. 122. The government opposes the motion because the Court's process already adequately addresses Morris' concerns. Doc. No. 130, pp. 13-14. Under the Court's procedures, Morris is already allowed to submit voir dire questions of prospective jurors and therefore the Motion is granted to the extent that it coincides with the Court's current practices. The Court's standard criminal pretrial order permits the parties to submit voir dire questions to the Court ten days before the start of trial; if permitted by the Court, such submissions may be used to supplement the standard voir dire questioning conducted of prospective jurors.

## MOTIONS OF DEFENDANT VUCKOVICH

Defendant Vuckovich filed the following motions: Motion for Severance (Doc. No. 92), Motion for Discovery (Doc. No. 93), Motion for a Bill of Particulars (Doc. No. 94), and Motion for Notice of the government's Intention to use Evidence Subject to a Motion to Suppress (Doc. No. 96).

### Vuckovich's Motion for Severance (Doc. No. 92)

#### I. Introduction

On June 12, 2008, Defendant Vuckovich, by and through counsel, filed a Motion for Severance on the grounds that a joint trial would compromise Vuckovich's right to confrontation under the Sixth Amendment. Doc. No. 92. Because this Court finds that Vuckovich is properly joined, and that risks to his Sixth Amendment rights are not sufficiently severe, this Motion is denied.

Vuckovich's Motion avers that Vuckovich's co-Defendants have made statements implicating Vuckovich, and that the government intends to use those statements at trial. Doc. No.

14

92, ¶¶ 1-2. These statements are from taped telephone calls that occurred at Cambria County Prison, and are attached to the Motion as three exhibits. Doc. No. 92, exhibits A, B, C. Exhibit A contains a transcript of a conversation between Demont Morris, Kim King, and Valentino Evans on April 18, 2006, from 10:56 to 11:06. Exhibit B contains a transcript of a conversation between Demont Morris, Kim King, and Valentiono Evans, and an individual identified only as Brad, conducted on April 18, 2006 from 11:07 to 11:17. Exhibit C contains a transcript of a conversation between Demont Morris, Kim King, and Linda Morris on April 18, 2006 from 14:02 to 14:12.

Vuckovich's Motion states his belief that co-Defendants Evans and Morris will not testify at trial. Doc. No. 92, ¶ 3. Therefore, the Motion argues that Vuckovich is entitled to a separate trial, because a joint trial will compromise Vuckovich's right to confront the witnesses against him, a right guaranteed by the Sixth Amendment. Doc. No. 92, ¶ 5. Additionally, Vuckovich claims that these rights cannot be properly preserved by redacting the statements at issue. Doc. No. 92, ¶ 4. Vuckovich argues in the alternative that Federal Rule of Criminal Procedure 14 requires a severance to avoid inevitable prejudice. Doc. No. 92, p. 4. At the Hearing, Vuckovich's Counsel directed the Court's attention to specific pages within the exhibit containing references to Vuckovich: A-2, A-6, A-9, B-10, C-2, C-5, and C-8. Hr'g Tr., p. 31. Furthermore, Vuckovich's Counsel argued that redaction would not be a sufficient remedy. Hr'g Tr., p. 32.

On October 3, 2008, the government filed a response to Vuckovich's Motion. Doc. No. 130, pp. 14-18. The government opposes severance and distinguishes the current situation from that of *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). In support of this stance, the government argues that Vuckovich's Constitutional right to confrontation is not

15

invoked, because the statements at issue are not testimonial and thus outside the scope of the Confrontation Clause as defined by *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Doc. No. 130, pp. 14-17. The government argues that the statements are not testimonial because they were not made to law enforcement authorities or an informant. Doc. No. 130, p. 18. The government concludes that because the statements are not testimonial, they are outside the scope of the Confrontation Clause, and therefore governed only by the Federal Rules of Evidence. Doc. No. 130, p. 18.

At the Hearing, the government affirmed its argument that the statements were not testimonial and thus fell outside the scope of *Bruton* and *Crawford*. Hr'g Tr., p. 30. The government also argued that the statements could be redacted if necessary. Hr'g Tr., p. 31.

## II. Analysis

Federal Rule of Criminal Procedure 8(b) states that two or more defendants may be charged in the same indictment or information "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." This rule was intended to promote efficiency by avoiding a multiplicity of trials. *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 937, 122 L. Ed. 2d 317, 324 (1993) ("Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'") (citations removed). Furthermore, the general rule is that persons charged in a conspiracy should be tried together. *See, e.g.*, *United States v. Arenal*, 768 F.2d 263, 267 (8th Cir. 1985).

However, even where two or more defendants have been lawfully joined in the same prosecution, a defendant may move for severance. "When defendants have been properly joined

16

pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, 'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *U.S. v. Voight*, 89 F.3d 1050, 1094 (3d Cir. 1996) (*citing Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 938, 125 L. Ed. 2d 317, 325 (1993)). One situation where severance may be appropriate is where the prosecution intends to offer a confession of the first defendant that implicates the second defendant in the crime. This situation introduces a tension between the first defendant's privilege against self-incrimination pursuant to the Fifth Amendment, and the second defendant's right to confront witnesses against him, pursuant to the Sixth Amendment. U.S. CONST. amends. V and VI. A criminal defendant has the right, guaranteed by the Sixth Amendment, to confront adverse witnesses. U.S. CONST. amend. VI (guaranteeing that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). This right to confrontation includes the right to cross-examination. *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). In the aforementioned scenario, the first defendant may be acting as a witness against the second defendant. If the first defendant declines to testify by invoking his Fifth Amendment right against self-incrimination, the second defendant would not be able to confront or cross-examine the first as to the incriminating confession. This situation potentially seriously infringes the second defendant's Constitutional rights; as John Wigmore stated, cross-examination "is beyond any doubt the greatest legal engine ever invented for the discovery of truth." John Henry Wigmore, 5 *Evidence in Trials at Common Law* § 1367, 32 (1979).

In the landmark case *Bruton*, the Court described the Constitutional grounding of a

17

defendant's right to cross-examine adverse witnesses in holding that a convicted co-defendant should have been granted a separate trial. 391 U.S. at 126, 88 S. Ct. at 1622, 20 L. Ed. 2d at 479 In *Bruton*, two defendants were accused of the participating in the same crime and both were tried jointly. *Id.* at 124, 88 S. Ct. at 1621, 20 L. Ed. 2d at 478. One defendant confessed, naming and incriminating the other defendant. *Id.* The trial judge instructed the jury only to consider the confession against the confessing defendant. *Id.* at 125, 88 S. Ct. at 1622, 20 L. Ed. 2d. at 478. However, the Supreme Court found that a Confrontation Clause violation, caused by the admission of a nontestifying codefendant's "powerfully incriminating" confession, is not necessarily cured by a limiting instruction. *Id.* at 135-36, 88 S. Ct. at 1628, 20 L. Ed. 2d at 485. *Bruton* explained that in some circumstances, a trial judge's instructions and/or redactions can resolve the dilemma. *Id.* at 135, 88 S. Ct. at 1627, 20 L. Ed. 2d at 484. However, in a circumstance such as the one in *Bruton*, where the "powerfully incriminating extrajudicial statements" of one co-defendant would be admitted against another co-defendant, without the opportunity of cross-examination, then effective confrontation is not possible and the proper solution is separate trials. *Id.*

The Court later characterized *Bruton* as dealing with the "narrow exception" circumstance where a limiting instruction or redaction could not adequately mitigate any prejudice. *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S. Ct. 1702, 1707, 95 L. Ed. 2d 176, 186 (1987). *Bruton* explained:

> There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be igonored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

18

> Not only are the incriminations devastating to the defendant but
> their credibility is inevitably suspect . . . .

*Bruton,* 391 U.S. at 135-36, 88 S. Ct. at 1627, 20 L. Ed. 2d at 484.

More recently, the Court issued an interpretation of the Confrontation Clause in *Crawford,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177. Working from a historical analysis, *Crawford* explained the significance of the term "witnesses" within the text of the Sixth Amendment. *Id.* at 52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192 ("[The Confrontation Clause] applies to 'witnesses' against the accused–in other words, those who 'bear testimony.'"). The intent of the Confrontation Clause was to defend against the use of "testimonial" evidence from a witness who does not appear at trial. *Id.* Therefore, *Crawford* departed from earlier cases and re-defined the circumference of the Confrontation Clause, essentially stating that a criminal defendant is only entitled to confront those "witnesses" against him who offer "testimonial" evidence. *Id.* In essence, *Crawford* declared that the Confrontation Clause prevents only the "most flagrant inquisitorial practices," while the law of evidence regulates other out-of-court statements. *Id.* at 51, 124 S. Ct. at 1363, 158 L. Ed. 2d at 192.

With the broad setting of the relevant law thus introduced, we now turn to the specific issue raised in Vuckovich's motion: whether the potential admission of the nontestifying codefendants' statements in a joint trial would so violate Vukovich's Sixth Amendment Right to Confrontation as to require severance of the joint trial. Because severance is the only issue raised by Vuckovich's Motion, the Court does not find it necessary to consider the admissibility of the at-issue statements. This analysis theoretically assumes that the statements would be admissible, but that assumption is only for the limited purposes of full analysis of this Motion and its narrow request for relief.

19

Furthermore, while this Case's set of facts presents numerous interesting legal questions, including those brought up in the Motion and response, such issues are not necessary to a determination of Defendant's request for severance. In particular, in this analysis, the Court makes no assessment of whether the at-issue statements are "testimonial", and hence within the bounds of the Confrontation Clause, as discussed in *Crawford*. The Court avoids this question foremost because more solid grounds are available that make such a determination superfluous, at least for the purposes of this Motion.

This Motion is thus decided upon the following dispositive grounds: the Court holds, for the forthcoming reasons, that the statements at issue are not sufficiently inculpatory of Vuckovich to fall within the scope of *Bruton* and its progeny with respect to when severance is required. The concern that drove the *Bruton* court to require severance was the severe prejudice caused by the offending statements. 391 U.S. at 127, 88 S. Ct. at 1622, 20 L. Ed. 2d at 480. The at-issue statements in *Bruton* were Bruton's co-defendant's direct confessions to an investigator that Bruton and the co-defendant committed the crime. 391 U.S. at 124, 88 S. Ct. at 1621, 20 L. Ed. 2d at 478. *Richardson* explained: "In *Bruton*, the codefendant's confession 'expressly implicat[ed]' the defendant as his accomplice. Thus, at the time that confession was introduced there was not the slightest doubt that it would prove 'powerfully incriminating.'" 481 U.S. 200, 208, 107 S. Ct. 1702, 1707, 95 L. Ed. 2d 176, 186.

Several aspects of the case *sub judice* distinguish it from the situation in *Bruton*. First, the at-issue statements are not the same type analyzed in *Bruton*, confessions directly stating guilt. Rather, Vuckovich's co-defendants' statements are not direct, or even indirect, admissions of liability made to government officials. Furthermore, the statements do not facially or directly

20

inculpate Vuckovich in the commission of the charged crime. Therefore, the statements are not so prejudicial as to require the remedy of severance of the joint trial. While severance is not an appropriate action, Vuckovich obviously may be entitled to pursue other avenues of argument relating to the perceived harm of these statements.

The *Bruton* rule applies only in those relatively rare contexts where the statement is "so inculpatory" as to the defendant that the practical and human limitations of the jury system cannot be ignored. 391 U.S. at 135-36, 88 S. Ct. at 1627, 20 L. Ed. 2d at 484. The *Bruton* rule was framed in terms of "a codefendant's confession inculpating the defendant." 391 U.S. at 123, 88 S. Ct. at 1621, 20 L. Ed. 2d at 478. Courts have consistently demanded that challenged statements must be clearly inculpatory. *See United States v. Angwin*, 271 F.3d 786, 796 (9th Cir. 2001) ("Under *Bruton* and its progeny, the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, clearly, or powerfully implicates the defendant ... A statement is not facially incriminating merely because it identifies a defendant; the statement must also have a 'sufficiently devastating' or 'powerful' inculpatory impact to be incriminatory on its face.") (citations removed); *see also Nelson v. Follette*, 430 F.2d 1055, 1057 (2d Cir. 1970) ("[F]or the Bruton rule to apply, the challenged statements must be clearly inculpatory"); *People v. Lewis*, 181 P.3d 947, 978 (Cal. 2008) ("The meaning of the second statement is so unclear that it cannot even be said to incriminate, much less to powerfully incriminate, defendant.").

In *Richardson,* the Court held that the *Bruton* rule does not apply to statements that are not directly inculpatory. 481 U.S. 200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987). The at-issue statements in *Richardson*, as redacted, provided only evidentiary linkage, found to be inculpatory

21

only when combined with other evidence to be presented at trial. *Id.* at 208, 107 S. Ct. at 1707, 95 L. Ed. 2d at 186. *Richardson* refused to extend *Bruton* to this situation, reasoning that jury instructions would suffice. *Id.* at 209, 107 S. Ct. at 1708, 95 L. Ed. 2d at 187. *Richardson* distinguished *Bruton* by explaining that the confession in *Bruton* was "incriminating on its face," and "expressly implicat[ed]" the defendant. *Id.* at 208, 107 S. Ct. at 1707, 95 L. Ed. 2d at 186. Part of the problem in such situations is that the full extent of the harm of the statements would only be apparent at the end of the case. *Id.* at 209, 107 S. Ct. at 1708, 95 L. Ed. 2d at 187. Furthermore, *Richardson* explained that granting severance in all such cases of potential harm would unduly harm the goals of joint trials, such as judicial efficiency. *Id.* at 210, 107 S. Ct. at 1708, 95 L. Ed. 2d at 187.

The Court finds, in line with the above cases, that the inculpatory value of the at-issue statements is too uncertain to merit severance. The at-issue statements cannot be characterized as powerfully incriminating or devastating. Defendant's Motion does not elaborate upon the specific prejudice or inculpatory effect of the statements. Therefore, upon the Court's review, we find that these statements do not sufficiently implicate Vuckovich in a drug conspiracy to the extent required to merit severance of trial. Instead, most of the statements merely reveal that the utterers knew Vuckovich or otherwise interacted with him in affairs that, on their face, do not appear to be criminal. Any statements that may incriminate do so only inferentially. Therefore, the *Bruton* rule, as modified by later Supreme Court opinions, does not require severance.

The cases raised in Vuckovich's Motion are either insufficiently on-point or otherwise distinguishable. The Motion first cites *Gray v. Maryland*, 523 U.S. 185, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998), in support of its argument that the statements cannot be redacted to protect

22

Vuckovich. However, the statement in *Gray* was a direct confession from one co-defendant that directly "named and incriminated the other defendant." *Id.* at 188, 118 S. Ct. at 1153, 188, 140 L. Ed. 2d at 298. In the case *sub judice*, the at-issue statements are not confessions and do not directly incriminate Vuckovich in the charged crime in the same way as in *Gray*.

The Motion also raises *Lilly v. Virginia*, where the Supreme Court held that a statement in violation of *Bruton* could not be admitted under the "against penal interest" hearsay exception. 527 U.S. 116, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999). In *Lilly*, the at-issue statements were made to police by an accomplice in a crime spree who was not joined in defendant's trial. *Id.* at 121, 119 S. Ct. at 1822, 144 L. Ed. 2d at 125. The accomplice was called as a witness, but invoked the Fifth Amendment. *Id.* Then, the prosecution introduced the confession, which blamed the defendant for the homicide which occurred during the spree. *Id.* However, unlike the clear testimonial accusation in *Lilly*, the at-issue statements in the case *sub judice* do not violate the relatively narrow scope of *Bruton*, which demands "clearly inculpatory" statements. Moreover, *Lilly* did not directly address the issue of severance.

Furthermore, the Motion refers to *United States v. Mussare*, 405 F. 3d 161 (3d Cir. 2005). While perhaps relevant to an admissibility issue, *Mussare* is not dispositive with respect to the issue of granting severance. Finally, at the Hearing, Defendant's Counsel raised *United States v. Hardwick*, 544 F.3d 565 (3d Cir. 2008). In *Hardwick*, the at-issue statements referred directly to the co-defendant's participation in the crime. *Id.* at 576-77. As such, those statements led to a far more prejudicial kind of inference than any that can be drawn in the instant case.

Vuckovich's Motion also requests, in the alternative, severance of the trial due solely to the requirements of Federal Rule of Criminal Procedure 14(a), which states: "If the joinder of

23

offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." The Supreme Court explained: "We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 938, 122 L. Ed. 2d 317, 325 (1993).

Vuckovich's Motion does not cite a relevant precedential opinion where such relief was granted in a similar situation. The Motion references *United States v. Baker*, 98 F. 3d 330, 335 (8th Cir. 1996) and *United States v. Costa*, 31 F. 3d 1073 (11th Cir. 1994). Both of these cases presented factual situations where the risks to the defendant's trial rights were higher than those facing Defendant Vuckovich. *Baker* acknowledged that its facts represented one of the "rare case[s] in which severance should have been granted pursuant to Federal Rule of Criminal Procedure 14, because there is a serious risk that the joint trial prevented the jury from making a reliable judgment about guilt or innocence." *Baker*, 98 F. 3d at 335. The evidence at issue in *Baker* was "very prejudicial and highly inflammatory." *Id.* Vuckovich has not shown that the at-issue evidence in this case is similarly prejudicial.

Additionally, the relevance of *Costa* is uncertain; in that case, the district court granted a severance, while the Appeals Court later took issue with an evidentiary decision in one of the consequent separate trials. *Costa*, 31 F. 3d at 1076. Without a more specific assertion of a need, or a showing of evidence that would suggest such a need, the Court cannot find a reason to grant

24

this request. The Motion does not elaborate upon the prejudice that would accrue to Vuckovich, even assuming that the statements would be admitted into evidence. Thus, the Court finds that on the basis of the current record, Vuckovich does not face sufficient prejudice to merit the severance of this trial due to the requirements of Federal Rule of Criminal Procedure 14.

Therefore, upon analysis of the statements in light of the trajectory of this case as well as Defendant Vuckovich's Constitutional rights and rights under the Federal Rules of Criminal Procedure, the Court exercises its discretion not to sever the joint trial. *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) (explaining that "denial of severance is committed to the sound discretion of the trial judge."). The Court finds that based upon the current record, any potential prejudice to Vuckovich is outweighed by the numerous efficiency and fairness interests sustained by joint trials. In this ruling, the Court makes no comment as to the admissibility of the statements, or the propriety of a redaction, as a redaction has not been requested. The Court remains aware of its "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 80 S. Ct. 935, 4 L. Ed. 2d 921 (1960).

In conclusion, this Court finds that at this time, severance is not appropriate and therefore Defendant's Motion is denied.

**Vuckovich's Motion for Discovery** (Doc. No. 93)

Vuckovich's Motion asks for discovery of 1) the motion for a reduction of sentence filed by the government on behalf of Craig Oliver in United States v. Oliver, Cr. No. 04-249 (E.D. Pa. 2004), and any other documents submitted by the parties in connection with Oliver's sentencing reduction, and all sentencing transcripts; and 2) any statements by Morris and/or Evans that may form the basis of a motion for severance. Doc. No. 93. At the Hearing, Vuckovich's Counsel

notified the Court that the material related to Mr. Oliver was under seal, meaning that he could not acquire it without a court order. Hr'g Tr., p. 33.

The government responds by stating that at the appropriate time, it will comply with the mandates of *Jencks*, *Brady*, and *Giglio* if it is determined that Craig Oliver will be a government witness. Doc. No. 130, p. 19. The government further responds that it has already provided information that may form a basis for a motion for severance in this case, and will continue to comply with the dictates of Rule 16. Doc. No. 130, p. 20.

Therefore, the only matter to be resolved by the Court is whether Vuckovich is entitled to a court order to obtain the apparently sealed document at issue.

Defendant cites *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), for the proposition that the prosecution has an affirmative duty to disclose materially favorable evidence to the defendant. Doc. No. 93, pp 2-3. Defendant also cites *Strickler v. Greene*, 527 U.S. 263, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999), as holding that the *Brady* rule discussed in *Kyles* requires prosecutors to learn of evidence known only to investigators or other acting on behalf of the prosecution. Doc. No. 93, p. 3. Defendant points out that *Kyles* reiterated the absence of a distinction between "exculpatory" information and information which is useful to impeach the credibility of a government witness. Doc. No. 93, p. 4.

Vuckovich's claim is that the information will be useful for impeachment of potential government witnesses. This issue involves Vuckovich's Sixth Amendment Right regarding effective cross-examination. The Court, pursuant to the Federal Rules of Evidence, affords wide latitude to a defendant's cross-examination of a government witness where bias or partiality is at issue. However, the Court accepts the responses of the government that it will comply with all of

the relevant mandates with respect to disclosing evidence to Defendant Vuckovich. There appears to be no question that Defendant would be entitled to the requested document if the government intends to call Mr. Oliver as a witness. However, since it is not yet evident that the government intends to do so, the Court must be satisfied that the government, as asserted, will comply with its obligations at the appropriate time.

## **Vuckovich's Motion for a Bill of Particulars** (Doc No. 94)

Vuckovich moves for a bill of particulars, asking for the following information: 1) all persons known to the Grand Jury who are alleged to have been conspirators of Vuckovich; 2) descriptions of other identifying data of those individuals who are unknown to the Grand Jury who are also alleged to be conspirators in this case. Doc. No. 94.

In response to Vuckovich's Motion, the government states that the indictment meets the necessary requirements of clarity and certainty. Doc. No. 130, pp. 20-25. The government further argues that Vuckovich is trying to obtain general discovery through a Bill of Particulars. *Id.*

Federal Rule of Criminal Procedure 7(f) enables the Court to order a bill of particulars: "The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within ten days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires." Fed. R. Crim. P. 7(f). The Third Circuit explained:

> The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense. *United States v Tucker*, 262 F. Supp. 305, 308 (S.D.N.Y. 1966). A bill of particulars should fulfill this function "when the indictment itself is too vague and indefinite for such purposes." *United States*

27

> *v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965). *Accord, Wyatt v. United States*, 388 F.2d 395, 397 (10th Cir. 1968).

*U.S. v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971).

A motion for a bill of particulars should be granted "[o]nly where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial . . . .'" *U.S. v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005); *see also United States v. Rosa*, 891 F.2d 1063 (3d Cir. 1989).

The trial court's discretion in ordering a bill of particulars requires balancing between a defendant's interest in preparing his defense, and other considerations; in this instance, the Court must consider the privacy interests of the unindicted co-conspirators. *See U.S. v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971) (explaining that the granting of a bill of particulars remains a discretionary matter with the trial court and that no definite rules are possible). The Third Circuit admonished that bills of particulars should not be used as discovery devices. *Id.* at 64 (explaining that a defendant is entitled neither to a wholesale discovery of the government's evidence, nor to a list of the government's prospective witnesses).

The government's argument that the indictment is sufficient is not dispositive. "The sufficiency of the indictment or information is irrelevant in determining whether to order a bill of particulars. If the indictment or information is insufficient, it must be dismissed, and cannot be saved by a bill of particulars. The fact that it is sufficient is not an argument against granting the bill." 1 Charles Alan Wright, Federal Practice and Procedure (Criminal) § 129 (1999) (footnotes omitted). Additionally, the Court's determination was made despite the government's correct point that an indictment brought under 21 U.S.C. § 846 is sufficient if it "alleges the existence of

28

a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated." *United States v. Macklin*, 927 F.2d 1272, 1276 (2d Cir. 1991).

Instead, the heart of the issue is whether the indictment fails to provide factual or legal information and thereby "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *U.S. v. Rosa*, 891 F. 2d 1063 (1989). This determination focuses upon whether the defendant is sufficiently informed of the nature of the charges being brought against him, so as to 1) avoid surprise at trial; and 2) protect against double jeopardy because of an inadequately described offense. *See U.S. v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)

Applying the above standards, the Court grants in part Vuckovich's request for a bill of particulars as to the identity of all persons who are alleged to have been conspirators. The Court finds Vuckovich's request for such particularization is proper to the extent it requests information regarding uni ndicted co-conspirators whom the government intends to call as witnesses. Therefore, this Court grants Vuckovich's Motion in part, and orders the government to furnish the names of those co-schemers known to them and whom they will claim participated in the alleged scheme with Vuckovich. It is fundamental that a criminal defendant is entitled to sufficient information about the offense charged so as to prepare an adequate defense. *See* 1 Wright, Federal Practice and Procedure § 219, at 436.

In exercising its discretion, the Court limits the grant of the request to those unindicted co-conspirators whom the government intends to use as witnesses. The Supreme Court explained: "It is not uncommon for the government to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's

29

preparation for trial." *Will v. United States*, 389 U.S. 90, 99, 88 S. Ct. 269, 275, 19 L. Ed. 2d 305, 312 (1967); *see also United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir. 1980) (holding the indictment to be sufficient in part because it informed the defendant of the identity of the conspirators); *United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir.1979) ("A bill of particulars is a proper procedure for discovering the names of unindicted coconspirators who the government plans to use as witnesses."); *United States v. Hubbard*, 474 F. Supp. 64, 81 (D. D.C.1979); *United States v. Fine*, 413 F. Supp. 740, 746 (W.D. Wis.1976); *United States v. Burgio*, 279 F. Supp. 843, 846 (S.D.N.Y.1968).

Vuckovich offers three avenues of argument as to why an awareness of the identities of alleged unindicted co-conspirators is necessary to his preparation for trial. Doc. No. 94, pp. 2-3. As ably argued in the Motion, failing to grant the particularization in this instance would likely leave Vuckovich unable to identify the scope of the conspiracy, protect against double jeopardy, or raise a defense of multiple conspiracies. However, granting Vuckovich's motion in full could be especially harmful to the privacy interest of the individuals who are not going to be used as witnesses. Therefore, the Court directs the government to provide a bill of particulars identifying any unindicted co-conspirators whom the government intends to use as witnesses.

The Court's intent in granting this motion in part is not to strictly limit the government's proof at trial. Instead, the intent is to prevent surprise at trial, and enable the Defendant to properly prepare for trial. If the government is unable to respond adequately at this time, this Order places upon them a continuing duty to disclose additional information as acquired.

**Vuckovich's Motion for Notice of the Government's Intention to Use Evidence Subject to a Motion Suppress** (Doc. No. 96)

30

Vuckovich requests that the government be required to provide him notice of any evidence which Vuckovich may move to suppress pursuant to Rule 12(b). Doc. No. 96. The government responds that it is aware of no evidence that has not been disclosed, and that it is aware of and will continue to abide by its duty of disclosure. Doc. No. 130, pp. 25-26.

At the Hearing, Vuckvoich's counsel stated: "That's generally been mooted, Your Honor, by the government's response. They have advised that there's no suppressible evidence and I take them at their representation." Hr'g Tr., p. 36. Therefore, Defendant's motion is hereby denied as moot.

## MOTIONS OF DEFENDANT EVANS

Defendant Evans filed the following motions: Motion to Suppress (Doc. No. 90), and Motion for Discovery and Inspection (Doc. No. 90).

### Evans' Motion to Suppress (Doc. No. 90)

#### I. Background

Evans' Motion asks to suppress records of Defendant's telephone calls that were intercepted by law enforcement officials. Doc. No. 90. The United States' response argues that suppression is not appropriate. Doc. No. 130, pp. 26-32. The matter was further addressed at the Hearing. Hr'g Tr., pp. 26-32

Evans alleges that the statements were obtained in violation of "the attorney/client privilege, and the Defendant's privilege against self-incrimination, as well as the Defendant's Right to Counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." Doc. No. 90, ¶ 4. Defendant also argues that the interception of the phone calls by the government is an unlawful search and seizure under the Fourth Amendment. *Id.* ¶ 5.

The United States emphasizes that the recording that took place did not violate Defendant's right to counsel, because Defendant waived the right to privilege by "knowingly communicat[ing] with his attorney in the presence of a third party." Doc No. 130, p. 29. Furthermore, the United States argues that no other Constitutional violations occurred because of the circumstances of the recording.

## II. Analysis

### A. Recording the Phone Calls did not Violate Defendant's Rights under the Fourth, Fifth, Sixth and Fourteenth Amendments.

Defendant argues that the recording violated his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments. In seeking to suppress Defendant's statements, Defendant's brief s cites three Supreme Court cases: *United States v. Henry*, 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1988), *Brewer v. Williams*, 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977), and *Maine v. Moulton*, 474 U.S. 159, 106 S. Ct. 477 (1985). Additionally, Defendant emphasizes that some of the telephone conversations in question, involving conversations between Defendant and his attorneys, were privileged. The Court, as above in Defendant Morris' Motion, will undergo an analysis of the Defendant's possible rights under each Amendment.

#### 1. Recording the Phone Calls Did Not Violate the Fourth Amendment or Title III

The Fourth Amendment prohibits unreasonable searches and seizures. *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S. Ct. 1359, 1361, 93 L. Ed. 1782, 1785 (1949) ("The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society."). Where evidence is obtained in violation of this prohibition, it may not be used against the defendant. *Mapp v. Ohio*, 367 U.S. 643, 81 s. Ct. 1684, 1688, 6 L. Ed. 2d 1081, 1086

32

(1961).

In instances where Evans was not speaking with his attorney, the exclusionary rule is clearly not applicable because Evans did not have the required reasonable expectation of privacy. *See California v. Greenwood*, 486 U.S. 35, 39, 108 S. Ct. 1625, 1628, 100 L. Ed. 2d 30, 36 (1988) (explaining that a search and seizure only violated the Fourth Amendment if the defendant possessed a subjective expectation of privacy "that society accepts as objectively reasonable."). The phone calls involving Defendant's attorney, while also implicating the Fourth Amendment, will be analyzed below under the Sixth Amendment heading.

Whether a person has a reasonable expectation of privacy is based on an assessment of the totality of the circumstances, considering numerous factors. *Rawlings v. Kentucky*, 448 U.S. 98 (1980). Here, Defendant Evans did not have a reasonable expectation of privacy in his phone calls and hence did not have a Fourth Amendment right. First, the government has shown that Defendant Evans was given no less than four warnings that the phone calls made at the prison were subject to recording. FOF ¶¶ 8, 10, 11, 12. Second, the Cambria County Prison Inmate Telephone ID Number Release Form states that phone calls are monitored. FOF ¶ 10. Third, the prison's housing units have signs that warn of the recording. FOF ¶ 11. Finally, at the beginning of the phone calls, both the inmate and the person called hear message telling them that call is subject to monitoring and recording. FOF ¶ 12. The Court concludes that these several and repeated warnings are sufficient to destroy any putative expectation of privacy, even if one was not read or noticed. *See* FOF ¶ 9.

Additionally, Defendant's rights under Title III may have been implicated by the recordings. Title III prohibits the interception of "any wire, oral, or electronic communication,"

33

including telephone conversations, in the absence of judicial authorization. 18 U.S.C. §§ 2511(1), 2516. The statute provides that telephone communications intercepted in violation of Title III may not "be received in evidence in any trial . . . ." 18 U.S.C. § 2515. However, this broad prohibition is subject to two exceptions: 1) where the conversation is intercepted "by an investigative law enforcement officer in the ordinary course of his duties," 18.U.S.C. § 2510(5)(a)(ii), and 2) when "one of the parties to the communications has given prior consent to such interception." 18 U.S.C. § 2511(2)(c).

The Court finds that both exceptions are applicable to this situation, which means that Title III did not prohibit the recordings and cannot offer any evidentiary protection for Defendant Evans. First, the government offered sufficient evidence at the Hearing that such recordings take place in the ordinary course of police duties related to prison security. FOF ¶¶ 3-4. The recording policy of the Cambria County Jail is to monitor all calls made by all inmates, except those dialed directly to an inmate's attorney. FOF ¶¶ 4, 6. Such recording programs have been routinely upheld. *See United States v. Hammond*, 286 F. 3d 189, 192 (4th Cir. 2002); *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989).

Additionally, the calls in question fall within the exception granted when "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c); *see also United States v. Hodge*, 85 Fed. Appx. 278, 281 (3d Cir. 2003); *see also United States v. Demelio*, 2005 U.S. Dist. LEXIS 42931 (W.D. Pa. Aug. 16, 2005). Defendant Evans consented to the recording by making the phone calls after having received four forms of notice that the calls were recorded. FOF ¶¶ 8,10,11,12. The Court finds that these warnings, combined with Defendant Evans' consequent phone use, are sufficient evidence of consent. The Court's holding coincides

34

with numerous opinions that state that a telephone call can be monitored and recorded without violating the Fourth Amendment where one participant consents to the monitoring. *See, e.g.*, *United States v. White*, 401 U.S. 745, 752, 91 S. Ct. 1122, 28 L. Ed. 2d 453 (1971) (plurality opinion).

## 2. Defendant's Fifth Amendment Rights Were Not Violated

The Fifth Amendment provides that no person "shall be compelled to be a witness against himself . . . ." U.S. CONST. amend V. The Fifth Amendment has been interpreted to mean that an individual may refuse to answer questions that may self-incriminate, and violations of this right may be the basis for a confession being inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S. Ct. 1602, 1609, 16 L. Ed. 2d 694, 704 (1966). Here, Defendant Evans has not shown that any incriminating testimony was compelled or taken during interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297, 307 (1980). Defendant's statements were merely voluntary spontaneous statements. *See, e.g.*, *Arizona v. Mauro*, 481 U.S. 520, 529,107 S. Ct. 1931, 1936, 95 L. Ed. 2d 458, 468 (1987) (explaining that as to voluntary statements, Fifth Amendment privileges and exclusionary rules are not applicable).

## 3. Defendant's Due Process Rights Were Not Violated

As a condition of admissibility, the Due Process guarantees of the Constitution require that confessions be voluntary. *Lam v. Kelchner*, 304 F. 3d 256, 264 (3d Cir. 2002) ("Due Process clauses of the Fifth and Fourteenth Amendment bar the use of incriminating statements that are involuntary."). Voluntariness is assessed by the totality of the circumstances. *See Spano v. New York*, 360 U.S. 315, 323, 79 S. Ct. 1202, 1207, 3 L. Ed. 2d 1265, 1272 (1959). An example of an involuntary confession is one obtained by physical beating, as in *Brown v. Mississippi*, 297 U.S.

278, 56 S. Ct. 461, 80 L. Ed. 682 (1936). Official compulsion, typically engineered by police investigators, is necessary for a confession or incriminating statement to be involuntary. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S. Ct. 515, 520, 93 L. Ed. 2d 473, 482 (1986).

Evans's situation contained no such official compulsion. Instead, in assessing the totality of the circumstances, this Court finds more than sufficient evidence of voluntariness. For instance, the phone system within the prison is entirely voluntary. Second, four warnings were given to Evans regarding the monitoring of phone conversations. FOF ¶¶ 8, 10, 11, 12. This setting, lacking in deception or other leverage, typifies voluntariness; therefore, Evans' due process rights were not violated.

**4. Defendant's Sixth Amendment Rights Were Not Violated Because Government Ceased Listening to Recording Immediately Upon Recognition of Attorney's Voice; However, Any Obtained Attorney Conversations Should Not be Admitted into Evidence**

The Sixth Amendment guarantees the defendant in a criminal prosecution the right to the assistance of counsel. The Supreme Court described this right as "[e]mbodying 'a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself,' the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." *Maine v. Moulton*, 474 US 159, 169, 106 S. Ct. 477, 88 L. Ed. 2d 481, 491 (1985) (citation removed). This right applies to all critical stages of a criminal prosecution, after formal charges have been filed. *Massiah v. United States*, 377 U.S. 201 (1964). The right is violated where police obtain a confession from a defendant when counsel is not present, or without having first obtained a waiver of the defendant's right to have counsel present. Additionally, the intentional recording of a Defendant's conversation with his attorney

36

may also violate this right.

None of the three cases cited in Defendant's Motion is applicable in this situation. *Henry* held that incriminating statements made to a government informant while in jail pending trial were inadmissible because they were obtained in violation of Sixth Amendment right to counsel. 477 U.S. 270, 100 S. Ct. 2183, 65 L. Ed. 2d 122. In *Henry*, The government sent a paid informant into prison to elicit incriminating statement from the defendant, which was an intentional strategy to create a situation where the defendant would make incriminating statements without the assistance of counsel. *Id.* at 266, 100 S. Ct. At 2184, 65 L. Ed. 2d at 119. *Brewer* held that a police officer sought to elicit incriminating statements while transporting a defendant, without counsel, by evoking the notion that the deceased girl deserved a "Christian Burial." 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). In *Moulton*, the Court held that where the police planned and arranged to record conversations between an cooperating defendant and his co-defendant, the right to counsel was violated. 474 U.S. 159, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985).

## a. Recording Phone Calls between Defendant and Third Parties Did Not Violate Defendant's Sixth Amendment Rights to Have Attorney Present

Defendant's Motion does not identify any theory upon which the three cases could be relevant to the recording of Evans' phone calls. Regardless, the reasoning present in the cases is not applicable to Defendant Evans' situation. With respect to Evans, the government did not conspire to "deliberately elicit" incriminating statements from him when his counsel was not present. The police did not conspire, scheme, plan or arrange to elicit incriminating statements from Evans. Instead, the prison passively provided a telephone system for Evans' own benefit, while carefully and repeatedly warning Evans that all phone calls would be monitored. FOF ¶¶ 8,

37

10, 11, 12. This monitoring is a routine prison practice, necessary for the carrying out of prison safety. Of the factors in the three above cases that might support a finding of a Right to Counsel violation, none is present in the recording of Defendant Evans' phone calls. Therefore, the Court finds that there is no possibility of a Right to Counsel violation for the police obtaining statements via the recordings without Defendant's Counsel present.

**b. Absent a Showing of Investigatorial Intent or Prejudice to Defendant, Accidentally Recording Conversations between Defendant and a Third Party and Defendant's Attorney Did Not Necessarily Violate Defendant's Sixth Amendment or Fourth Amendment Rights; However, Any Obtained Attorney Conversations Should Not be Admitted into Evidence**

According to the Parties' Filings, and evidence presented at the hearing, the government recorded some phone calls between Defendant Evans and a third party, in which the third party then connected a three-way call to Defendant Evans' attorney. Doc. No. 130, p. 27; FOF ¶ 15. While the prison prohibits these three-way calls, apparently it has no way of detecting them. FOF ¶ 16. In listening to one phone call, the government investigator, Mr. Price, recognized the sound of the voice of Defendant's attorney. FOF ¶ 15.

Obviously, intentional and knowing government recording of a conversation between a defendant and his attorney would violate the central thrusts of the attorney-client privilege and a defendant's related Constitutional protections. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389,101 S. Ct. 677, 682, 66 L. Ed. 2d 584, 591 (1981). This privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* Under the attorney-client privilege, confidential communications between an attorney

38

and client are privileged from disclosure.

The first issue presented here is the scope of that privilege. Communications made in the known presence of a third party are typically not privileged. Here, Defendant Evans apparently communicated with his attorney in the presence of a third party. The presence of a third person on the call, the person who initiated the three-way call to the attorney, would obviate the purposes behind the Attorney-Client privilege, and hence the evidentiary protection. However, in these circumstances, it is unclear whether the third person remained on the phone to listen to the conversation between Defendant Evans and his attorney. If the third party did not listen in on the conversation, it is possible that the privilege was not waived.

Even without considering waiver of the privilege, though, Defendant has not shown a sufficient governmental incursion upon his Sixth Amendment rights. First, the government has shown that investigators had no intent to record or listen to a conversation between Defendant and his attorney. FOF ¶¶ 13, 15. Additionally, Agent Price ceased listening to the conversation upon first cognizing that the conversation included Defendant's attorney. FOF ¶ 15. Furthermore, the investigators and Cambria County Prison, have a reasonable policy in place designed to prevent investigatorial access to attorney-client conversations. FOF ¶ 13. In short, on the evidence the Court has before it, no constitutional violation occurred because the government investigator's unintentional intrusion upon an attorney-client conversation was not the result of a deliberate government tactic; instead, it was the direct result of the Defendant's own failure to follow prison protocols. FOF ¶ 6; *see Weatherford v. Bursey* 429 U.S. 545, 51 L. Ed. 2d 30, 97 S. Ct. 837 (1977) (finding no Sixth Amendment violation absent deliberate government scheme, and where no confidential communications were conveyed or prejudice shown).

39

Nonetheless, given the lack of certainty regarding the participation of the third party in the conversation, it is still inappropriate for the government to introduce evidence from those phone calls where the primary conversants are Defendant Evans and his Attorney. To some extent, the pertinence of this entire question remains unclear, as Mr. Price testified that he stopped listening to the conversation as soon as he recognized the attorney's voice. The investigator's prompt and appropriate cessation of listening to a potentially protected conversation is an admirable example of proper police conduct. Yet having acknowledged and emphasized their refusal to listen to such conversations, the government by definition could not attempt to admit into evidence any such conversations between Defendant Evans and his attorney, given that they have not reviewed such conversations.

Therefore, in consideration of the evidence presented at the Hearing, and the Parties' arguments, the Motion is granted in part in that any evidence from any recorded conversation involving primarily Defendant Evans and his attorney is inappropriate and should be suppressed. However, the Motion is denied in part in that any other recorded conversation should not be suppressed where it involves Defendant Evans and the substantial participation of any other third parties, not including Evans' attorney.

**Evans' Motion for Discovery and Inspection** (Doc. No. 90)

On June 3, 2008, Evans filed a Motion for Discovery and Inspection Pursuant to Federal Rule of Criminal Procedure 16(a)(1). Evans makes numerous requests for discovery and inspection. Doc. No. 90, pp. 2-4. The government responded to theses requests at Doc. No. 130, pp. 32-36. At the hearing, both Evans and the government stated they would rely upon its paper filings.

40

As to Request 1, the Court accepts the government's response that it has complied with and will continue to comply with the dictates of Rule 16.

As to Requests 2, 3, 4, and 10, the Court denies these requests, while noting that the government's response acknowledges its responsibilities and obligations under *Jencks*, *Brady*, and *Giglio*. This court has the inherent authority to require the pretrial disclosure of witness identities in such instances where disclosure is justified. *See e.g.*, *United States v. Jackson*, 508 F.2d 1001 (7th Cir.1975). However, Evans has not demonstrated any specific need for this information based upon the circumstances of this case; therefore, the defense has not persuaded the Court of the need to order this disclosure. *See e.g.*,*United States v. Alex*, 791 F. Supp. 723 (N.D. Ill.1992); *United States v. Taylor*, 707 F. Supp. 696 (S.D.N.Y.1989).

As to Request 5, the Court accepts the government's declaration that it has already disclosed the requested reports.

As to Request 6, the Court finds that the government's response appears to have answered Defendant's query.

As to Request 7, the Court finds that the government's response appears to have answered Defendant's query.

As to Request 8, the Court finds that the government's response appears to have answered Defendant's query; to the extent that the response is not satisfactory, the Court directs Evans' attention to the governing date established by the Court's current pretrial order.

As to Request 9, the Court finds that the government's response appears to have answered Defendant's query.

As to Request 11, the Court finds that the government's response appears to have answered

Defendant's query.

As to Request 12, the Court finds that the government's response, indicating its awareness of its continuing obligations, appears to have answered Defendant's query.

As to Request 13, the Court finds that the government's response appears to have answered Defendant's query; the Court again directs Evans' attention to the governing date established by the Court's current pretrial order.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**